Barnett Wade GARRISON, Appellant,

v.

TEXAS COMMERCE BANK, Appellee.

No. 16943.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Nov. 17, 1977.

Rehearing Denied Dec. 15, 1977.

Schleider & Ewing, Ben H. Schleider, Jr., Harry G. Dippel, Paul S. Francis, Houston, for appellant.

Liddell, Sapp, Zivley & Brown, Willis Witt, R. Bruce LaBoon, John L. Hopwood, Houston, for appellee Texas Commerce Bank National Association, Temporary Admin. of the Estate of Candace Mossler, Deceased.

Lackshin & Nathan, Herbert N. Lackshin, Bernus Wm. Fischman, and A. R. Schwartz of counsel, of Houston, for appellees Rita Johnson Wilder and Norman Johnson.

John H. Holloway, Houston, for appellees Daniel Mossler and Christopher Mossler.

COLEMAN, Chief Justice.

Barnett Wade Garrison appeals an order dismissing his contest to the probate of the purported last will and testament of Candace Mossler, Deceased, on the ground that he was not a "interested person" as required by the probate laws of the State of Texas. Mr. Garrison contends that he was a surviving spouse of Candace Mossler Garrison, therefore a person interested in the estate as provided by Section 3(r) Tex.Prob. Code Ann.

The evidence reflects that on the 3rd day of December, 1975 an order was entered in the Court of Domestic Relations No. 2 of Harris County, Texas, in Cause No. 974,099 entitled In the Matter of the Marriage of Candace Mossler Garrison and Barnett Garrison. This order recites that the cause came on to be heard on the 21st day of October, 1975, and that on the 30th day of October, 1975, the court being of the opinion that the "material allegations in petitioners original petition for divorce . . have been proved by full and satisfactory evidence . . . it finds that a divorce should be granted to the petitioner, and the petitioner's name be changed and restored to Candace Mossler." The court then recited in the order that a Master in Chancery had been appointed and that the property rights of the parties "are not determined at this time, but this court retains jurisdiction of the property rights" of such parties until finally determined at a future date. Finally the court "Ordered, Adjudged and Decreed that an *order* be, and the same is hereby entered, that the bonds of matrimony between the petitioner Candace Mossler Garrison and the respondent Barnett Garrison be and they are hereby dissolved, and a divorce is granted to petitioner Candace Mossler Garrison . . . It is further Ordered, Adjudged and Decreed that the property rights of the parties herein are not determined at this time, but this court retains jurisdiction of the property rights of the parties until the entry of a *final decree of divorce* in this cause." (italics added).

In an order subsequently entered requiring Candace Mossler Garrison to provide security for costs the court stated:

"It is further Ordered that the requirement that Petitioner provide security for costs under this order shall not be construed as an adjudication of ultimate lia-

bility for costs, it being the intention of the court to make a determination of ultimate liability for cost at the time of entry of the final judgment herein."

On October 26, 1976 before the hearings of the Master in Chancery were concluded Candace Mossler Garrison died. Subsequently a will and codicil was presented for probate and a contest was filed by Barnett Garrison. The temporary administrator filed a motion in limine requesting that Barnett Garrison be required to show that he was a person interested in the estate as contemplated by law and that in the absence of such proof his contest to the probate of the will be dismissed.

The probate court entered an order sustaining the motion in limine and dismissing the contest which recited:

"After being fully apprised, the Court finds that Contestant, Barnett Wade Garrison, was divorced from the Deceased, Candace Mossler, by a decree of divorce rendered orally by The Honorable Herman Mead, Presiding Judge of the Court of Domestic Relations Number Two of Harris County, Texas, on the Third day of October, 1975, and formally entered by written decree on the Third day of December, 1975."

◼ It is well settled that a cause of action for a divorce is purely personal and that the cause of action for a divorce terminates on the death of either spouse prior to the rendition of a judgment granting a divorce. *Ex Parte Cahill,* 286 S.W.2d 210 (Tex.Civ.App.—Beaumont 1955, no writ history); 1 Tex.Jur.2d, Abatement & Revival § 105; 24 Am.Jur.2d, Divorce & Separation § 182.

◼ A judgment to be final must dispose of all issues and parties in the case. *Northeast Independent School District v. Aldridge,* 400 S.W.2d 893 (1966); *Hargrove v. Insurance Inv. Corporation,* 142 Tex. 111, 176 S.W.2d 744 (1944).

◼ Rule 41, Tex.R.Civ.P. authorizes a trial court to sever claims against a party in a law suit and to proceed with each claim separately. A severance divides a lawsuit into two or more independent causes, each of which terminates in a separate, final and enforceable judgment.

◼ Rule 174, Tex.R.Civ.P. authorizes the trial court in the furtherance of convenience and to avoid prejudice to order a separate trial of any claim or issue. The separate trial results in an interlocutory order determining the claim or issue so tried, but there is only one final judgment entered after all claims and issues involved in the suit have been tried. An issue that is tried separately under Rule 174 need not constitute a complete lawsuit in itself. Severance is possible only where the suit involves two or more separate and distinct causes of action. Each of the causes in which the action is severed must be such that the same might properly be tried and determined if it were the only claim in controversy. The severable cause of action may be tried separately under the provisions of rule 174, but an issue that might properly be the subject of a separate trial is not necessarily severable. *Kansas University Endowment Association v. King,* 162 Tex. 599, 350 S.W.2d 11 (1961).

Tex.Family Code Ann. § 3.63 (1974) provides:

"In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."

◼ The language of the family code quoted above is mandatory. It has been held that the trial court is not authorized to sever the question of the manner in which the estate of the parties is to be divided between them from the cause of action for divorce. *Angerstein v. Angerstein,* 389 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1965, no writ history). The severance of the property issues from the cause of action for divorce would constitute error on the part of the trial court. *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299 (1960).

In *Webb v. Jorns,* 488 S.W.2d 407 (Tex. 1972) the court said:

". . . The order of October 28, 1970, dismissing the hospital was an interlocutory order, because it did not dispose of all parties and issues in the pending suit. Since the trial court did not sever the cause against the hospital from the rest of the case, the interlocutory judgment did not become a final judgment until it was merged into the final judgment which the court rendered on January 18, 1971, disposing of the whole case. . . ."

The judgment entered in the Court of Domestic Relations No. 2 on December 3, 1975, did not purport to sever the divorce action from the property issues. On the contrary the court clearly stated that he retained jurisdiction "of the property rights of the parties until the entry of a final decree of divorce in this cause." Since the court did not specifically sever the issue of property rights from the issue of divorce, we will not presume that the court intended such an action since such a severance would have constituted error.

■ It is settled that a trial court has power to set aside an interlocutory judgment at any time prior to the entry of a final judgment. *Texas Crushed Stone Company v. Weeks*, 390 S.W.2d 846 (Tex. Civ.App.—Austin 1965, writ ref'd n.r.e.).

It is clear from the order entered by the Court of Domestic Relations that the trial court intended to render a judgment dividing the community property at a later time and thereafter to enter the final judgment in the cause. The trial court must be considered to have ordered a separate trial under Rule 174(b). The order entered was an interlocutory judgment.

In those jurisdictions where interlocutory judgments of divorce are required or authorized it is a general rule that after the entry of the interlocutory judgment or decree, the status of the proceeding is that of a pending action and it abates on the death of either party before the final decree is granted. In the absence of specific statutory authority a final judgment of divorce cannot thereafter be rendered. 24 Am. Jur.2d, Divorce & Separation § 435, p. 559.

This rule has been applied by the courts of the State of Texas. In *Kinney v. Tri-State Telephone Co.*, 222 S.W. 227 (Tex. Comm'n App. Section B 1920, jdgmt. adopted) the court had under consideration a case in which an interlocutory decree of divorce had been entered by the Superior Court of the State of California, County of Los Angeles. In accordance with the law of California at that time a final divorce decree could not be entered until the period of one year from the entry of the interlocutory decree had expired. Under the California law it was necessary that a motion for final judgment be presented after the expiration of the one year period. Some two years after the entry of the interlocutory judgment the plaintiff in the divorce suit died. After his death a motion to make the judgment of divorce final was presented in the court of California and was granted. Thereafter, Nellie Kinney, the defendant in the divorce action, claimed certain death benefits as the wife of H. B. Kinney. Elsie Kinney who had married H. B. Kinney after the entry of the interlocutory decree but before the entry of the final decree also asserted a claim to the death benefits. The Commissions of Appeals held that Nellie Kinney was entitled to death benefits and stated:

"Whether we undertake to construe the effect of the court proceeding in California under the law of California or under the laws of Texas is, in our judgment, immaterial. In our opinion, under the laws of Texas the interlocutory judgment rendered August 19, 1914, possessed no power destructive of the relation existing between Nellie Kinney and H. B. Kinney until it later should be strengthened by a final judgment pronouncing the decision of the court with reference to the rights of the parties. . . .

\* \* \* \* \* \*

This order shows, therefore, on its face, that the court held within its bosom the final judgment to be rendered, and that it was postponed, subject to rendition of final decree at some future date."

The order entered by the Court of Domestic Relations showed on its face that the court "held within its bosom the final judgment to be rendered, and that it was postponed, subject to rendition of final decree at some future date." Clearly the trial court had continuing control of the interlocutory order granting a divorce with power to set it aside even at a subsequent term of court. *Kone v. Security Finance Co.,* 158 Tex. 445, 313 S.W.2d 281 (Tex.1958).

The appellee contends that the general rules which have been discussed are not applicable, or have not been applied, in many cases decided by the courts of Texas. Cases are cited in which the divorce decree has been upheld on appeal where there was no distribution of property in the judgment although the pleadings prayed for a division of the community property. In *Blancas v. Blancas,* 495 S.W.2d 597 (Tex.Civ.App.— Texarkana 1973, no writ) such a case was presented and the court stated:

> ". . . the trial court either found there was no property, or that such property as existed had already been divided between the parties . . ."

The judgments in these cases do not show on their face that property rights remain to be adjudicated.

In other cases the courts have established a plan for the distribution of the property either announced in open court or incorporated into a signed judgment. In *Cage v. Cage,* 209 S.W.2d 626 (Tex.Civ.App.—San Antonio 1948, writ ref'd n.r.e.) a decree was entered dissolving the marriage and approving a property settlement agreement. The decree further stated that it was in interlocutory pending consummation of the agreement. The appellate court held that a final judgment had been rendered despite the language attempting to make the decree interlocutory.

*Piro v. Piro,* 327 S.W.2d 335 (Tex. Civ.App.—Fort Worth 1959, writ dism'd) is an example of a case in which a final judgment was rendered by the trial court granting a divorce and determining the property rights of the parties. On appeal error was found in the manner of dividing the proper-

ty. The appellate court in effect severed the cause of action for divorce from the property right issues and affirmed that part of the decree awarding the divorce. The authority of the Court of Civil Appeals to sever a portion of the judgment and remand that portion only to the trial court while affirming the remainder of the judgment is derived from Rule 434, Tex.R.Civ.P. This rule authorizes a partial reversal and remand in cases where the issues are "severable". *Waples-Platter Co. v. Commercial Standard Ins. Co.,* 156 Tex. 234, 294 S.W.2d 375 (1956). The rule has been construed by some courts as meaning a judgment may be reversed in part and affirmed in part where the valid portion is not so dependent upon the invalid as to fall with it. *Eppler v. Wiginton,* 252 S.W.2d 513 (Tex.Civ.App.— Eastland 1952, no writ history); *Blume v. Weaver,* 412 S.W.2d 760 (Tex.Civ.App.— Eastland 1967, no writ history).

Rule 434 was amended effective January 1, 1976, and the pertinent provision now reads:

> ". . . if it appear to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested."

If *Piro v. Piro,* supra, stands for the proposition that the issue of property division is *severable* from the issue of divorce, it cannot be considered authoritative on that question.

The case of *Dunn v. Dunn,* 439 S.W.2d 830 (Tex.1969) is also cited. In this case the Supreme Court upheld a judgment granting a divorce although one party died before entry of the judgment which had been orally rendered. The court found that the oral rendition constituted a final judgment because the court not only granted a divorce but also announced a method for the division of the property of the parties.

There is another group of cases which hold that the community property which is not divided in a divorce decree is owned by the parties after a divorce as joint tenants. In these cases the validity of a previously entered divorce decree is not questioned. Article 3.63 of the Family Code requires the trial court to order a division of the property in a decree of divorce, the finality of decree is not dependent upon a finding that all of the property belonging to the parties was divided. When a decree purporting to effect a division of community property fails to provide for and make disposition of certain properties, the law does not vest title to such property in either the husband or the wife. They both remain owners of the property as tenants in common. *Ex Parte Williams*, 160 Tex. 314, 330 S.W.2d 605 (1960); *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970). These cases support the proposition that if the issues raised by the pleadings in a divorce case are disposed of in the judgment rendered, though imperfectly or erroneously, the judgment is a final judgment upon which process can issue.

While it may be difficult to rationalize all of the cases involving divorce and property rights with the rule requiring that all issues raised by the pleadings be settled either expressly or by implication in a final judgment, and with the rule forbidding two judgments in one cause of action where there is no severance, we are not persuaded that a different rule is applied in divorce cases from that applied in other types of cases. Where a judgment does not dispose of all the issues raised by the pleading, and does not purport to do so, the judgment is interlocutory.

The appellees rely on the case of *Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex.1975), as being a case in which two final judgments were entered. The facts in *Cockerham v. Cockerham* are quite similar to those in the case at bar. The case was called for trial on September 11, 1972 and certain special issues were submitted to a jury. The trial court granted a divorce and based upon the findings of the jury, award-ed the care and custody of the children of the marriage to E. A. Cockerham. The judgment entered recited:

"The Court further finds that due to the intervention of the Trustee in Bankruptcy, the property rights of the parties herein are not determined at this time, but this Court retains jurisdiction of the property rights of said parties until finally determined at a future date."

Costs are hereby adjudged to the parties as same might have occurred by each party.

"It is so ordered."

In September 1973, the cause was again called for trial on the property rights of the parties and a judgment was entered dividing these properties which recited:

". . . and a divorce having heretofore been granted with custody of the minor children awarded to E. A. Cockerham by the jury, and the court having been presented to it the question only of the division of the properties of said parties, the court finds . . ."

Both the trustee in bankruptcy and Mrs. Cockerham appealed from the judgment insofar as it determined the property rights of the various parties. Neither the court of civil appeals nor the Supreme Court directly addressed the question raised by the fact that two judgments were entered in the same cause. The opinion of the Supreme Court begins in this fashion:

"This is a divorce case in which the wife's trustee in bankruptcy has intervened. The trial court granted the divorce and made the property division to be discussed hereinafter. . . ."

Further in the opinion after reciting that the trial court entered a judgment granting a divorce and awarding custody of the children on September 11, 1972, and noting the provision whereby the court retained jurisdiction of the property rights of the parties, the opinion states:

"About a year later, in September 1973, the cause was again called for trial for the purpose of determining the property rights of the parties. . . ."

It is significant that the court considered a finding made by the jury at the first trial as sufficient reason to set aside a finding made by the court during the second trial. The court stated:

"Though the trial court has wide discretion in dividing the property of the spouses as it feels just and in disregarding advisory answers of the jury, it may not ignore the jury's answers which extend to issues of fact from which the status of property is determined . . . The action of the trial court in disregarding the jury's answer regarding the status of the property was error . . ."

The opinion also states:

"It is well established that the trial court has wide discretion in the division of the property on divorce and it will be disturbed only when an abuse of discretion is shown. . . . Considering the record before us, we are unable to say the trial court abused its discretion."

It appears that the Supreme Court construed the two orders entered by the trial court as constituting a single judgment. The first order of the court was interlocutory and was made final when the judgment was rendered dividing the property of the parties. The judgment entered dividing the property referred to the judgment granting the divorce thereby impliedly incorporating its terms into the final judgment. We consider that the Supreme Court applied the rule of law announced in *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706 (1961), and reaffirmed in *H. B. Zachary Co. v. Thibodeaux*, 364 S.W.2d 192 (Tex.1963). The rule announced in the *McEwen* case is that where an interlocutory order is entered disposing of one defendant, that order becomes final, and there is a final judgment, when a subsequent order is entered disposing of the remaining defendants. See also *Lubell v. Sutton*, 164 S.W.2d 41 (Tex.Civ.App.—Texarkana 1942, writ ref'd); *Sessions v. Whitcomb*, 329 S.W.2d 470 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.).

The judgment of divorce rendered by the Court of Domestic Relations was interlocutory. *Angerstein v. Angerstein*, 389 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1965, no writ); *Campbell v. Campbell*, 550 S.W.2d 164 (Tex.Civ.App.—Austin 1977, no writ history); *Stone v. Stone*, 531 S.W.2d 850 (Tex.Civ.App.—Dallas 1975, no writ history); *Hottell v. Hottell*, 454 S.W.2d 880 (Tex.Civ.App.—San Antonio 1970, no writ history).

The death of Mrs. Candace Mossler Garrison prior to the division of the community property of the parties rendered the cause moot and no final judgment of divorce could thereafter be rendered. The trial court erred in finding that Barnett Wade Garrison and Candace Mossler Garrison were divorced and that Barnett Wade Garrison was not a person interested in the Estate of Candace Mossler Garrison. As the surviving spouse of Candace Mossler Garrison, Barnett Wade Garrison qualified as an interested person as defined in Section 3(r), Tex.Prob.Code Ann. The trial court erred in dismissing Barnett Wade Garrison's contest of the will of Candace Mossler Garrison.

The judgment is reversed and the cause is remanded to the trial court.