NACOGDOCHES MEMORIAL
HOSPITAL, Appellant,

v.

Joseph JUSTICE, Appellee.

No. 12–84–0114–CV.

Court of Appeals of Texas,
Tyler.

June 20, 1985.

Rehearing Denied July 25, 1985.

Ralph Zeleskey, Lufkin, for appellant.

Jeff Badders, Nacogdoches, for appellee.

Before SUMMERS, C.J., and COLLEY and BILL BASS, JJ.

COLLEY, Justice.

This is a worker's compensation case. Nacogdoches Memorial Hospital, defendant/appellant (Hospital), a self insurer under the worker's compensation law, appeals from a judgment awarding Joseph Justice, plaintiff/appellee, compensation for 370 weeks of total temporary incapacity. We affirm.

The record shows that Justice, an employee of Hospital, suffered a heart attack while "buffing" the hall way of the hospital building on November 21, 1981. He was immediately hospitalized in Memorial Hospital, and in all was hospitalized for 30 days on three separate admissions to such hospital. The case went to trial before a jury on September 13, 1983. On September 14, 1983, the jury returned its verdict in favor of Justice, finding (1) that Justice's heart attack was caused by strain and exertion and was sustained by him in the course

of his employment with Hospital; and (2) that the heart attack was a producing cause of total incapacity for a period of 370 weeks. In answer to Special Issue 10, the jury found that Hospital failed to furnish "all such medical and doctor's care as were reasonably required to cure and relieve [Justice] from the effects ... naturally resulting from the injuries...." In answer to Special Issue 11, the jury found that the "reasonable charges for medical and doctor's care ... reasonably required.... to cure and relieve [Justice] from the effects ... naturally resulting from the injuries...." were $10,972.60. The jury further found that Justice had not worked for Hospital for 210 days during the year preceding the accident, but found also that another employee of the same class (janitor) had worked at least 210 days in the year immediately preceding the date of the injury. In response to Special Issue 13, the jury found that "another employee" had a daily wage rate of $28. The verdict was accepted by the court on September 14, 1983. Justice died from another heart attack on September 22, 1983, before judgment was signed on the verdict. Counsel for Justice filed a motion to disregard the jury's answer to Special Issue 13 and a motion for judgment non obstante veredicto. The trial court granted both motions and made the following finding in a separate order dated November 17, 1983:

It is, therefore, ORDERED, ADJUDGED and DECREED that the jury's answer of "$28.00" to Special Issue Number 13 is hereby disregarded and set aside and that Plaintiff's average daily wage is as a matter of law sufficient to produce the maximum compensation rate of $133.00 per week, and the Court so finds.

On February 9, 1984, judgment was signed awarding Justice sums due on accrued compensation (100 weeks), interest, hospital and medical expenses and 270 weeks of unaccrued compensation at $133 per week less attorney's fees and previous payment of compensation made by Hospital.

By its first six points of error, Hospital claims that the trial court erred in disregarding the finding of the jury made in response to Special Issue 13, and in rendering judgment on the court's own finding that the average daily wages of plaintiff were "sufficient to produce the maximum compensation rate of $133 per week." In support of such points, Hospital argues that Rule 156 [1] somehow controls the authority of a trial court to disregard a jury finding and render judgment non obstante veredicto. Hospital cites us to *McKenzie v. McKenzie*, 667 S.W.2d 568 (Tex.App.—Dallas 1984, no writ). *McKenzie* has no application here. In fact, despite the language in that opinion that "Rule 156 was not intended to apply in a case such as this," the court in *McKenzie* held that the verdict was incomplete and would not support a judgment in that divorce suit. The obvious purpose of Rule 156 is merely to avoid a mistrial in a jury case upon the death of party occurring *after* a jury has resolved all material disputed issues of fact. The correctness of the judgment signed and entered on the verdict in this case must be tested without regard to the death of Justice, and in accord with the applicable statutes, rules of law and procedure. Rule 156. Article 8309, Section 1,[2] defines "average weekly wages" and provides the formula for computing the same in four circumstances. In situations where the injured employee has not worked 210 days or more in the year preceding his injury in the same employment in which he was engaged when injured, he may establish his average weekly wages by presenting competent testimony establishing that another employee of the same class as him worked at least 210 days of the year immediately preceding the date of the injury in the same or similar employment in the same or a neighboring place. In this case, the jury found that Justice had not worked for the required number of days in the year preceding his injury, but found that another employee of the same class had. The other "employee" in this case was Eugene Tolbert. Tolbert testified that he worked 314 days in the year immediately preceding the date of Justice's injury and received wages during that year of $12,779.81. This testimony is undisputed and conclusive. No other testimony or evidence was produced before the jury by either Justice or Hospital respecting the average daily wages of an employee of the same or similar class as Justice. Counsel for the parties in their respective arguments informed the jury that the answer to Special Issue 13 was $40. The evidence establishes that the average daily wages of Tolbert were $40.70. Hospital also argues that the trial court erred in substituting his own finding that "[Justice's] average daily wage rate is as a matter of law sufficient to produce the maximum compensation rate of $133 per week," and that there is no evidence to support the trial court's finding. We do not agree. The testimony of Tolbert conclusively establishes that his average daily wages for the year immediately preceding Justice's injury were $40.70. Applying the statutory formula thereto, Justice's average weekly wages, mathematically computed, amount to $234.80. Hence, the maximum compensation rate then in effect, $133 per week, is applicable. True, the trial judge did not specifically find that Tolbert's average daily wages were $40.70, but the finding made by the trial court is tantamount to such a finding. Under this record, the trial court acted properly in disregarding the jury's answer to Special Issue 13, and in granting Justice's motion for judgment non obstante veredicto because Justice's average weekly wages were conclusively proved as being $234.80. *LeMaster v. Fort Worth Transit Co.*, 138 Tex. 512, 160 S.W.2d 224, 226 (1942); *Lechner v. Kelley*, 467 S.W.2d 652,

---

1. All reference to rules are to the Texas Rules of Civil Procedure. Rule 156 reads, in part: "When a party in a jury case dies between verdict and judgment, ... judgment shall be rendered and entered as if all parties were living."

2. All reference to articles are to TEX.REV.CIV. STAT.ANN. (Vernon 1967) unless otherwise noted.

653–655 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). *See also* Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 362–364 (1960). Hospital's first six points of error are overruled.

Under its 7th point of error, Hospital complains that a portion of the argument of counsel for Justice was improper and requires reversal. The argument complained of was:

> Let me just tell you this about Dr. Henderson. If they didn't want to accept what Dr. Henderson said, they have a right under the Worker's Compensation Act to have this man examined by a doctor of their selection, anybody they want, and if he didn't want to do it the Court would order him to do it, and they could bring the medical records and let any other doctor look at them and say Dr. Henderson's wrong—

Hospital argues that such statement was improper and violates Rule 167a(c) which reads:

> (c) If no examination is sought either by agreement or under the provisions of this rule, the party whose mental or physical condition is in controversy shall not comment to the court or jury on his willingness to submit to an examination, on the right of any other party to request an examination or move for an order, or on the failure of such other party to do so.

Hospital's counsel made no objection to the argument, and did not request the court to instruct the jury to disregard the same. We hold that the harm, if any, resulting to Hospital by such improper argument could have been cured by objection and a prompt instruction by the court to disregard the same. Since no objection was made, the error is waived. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968). Point 7 is overruled.

**3.** Acts 1979, 66th Leg. ch. 513, § 1, 1979 Tex. Gen.Laws 1096, amended by Acts 1983, 68th

By its 8th and final point of error, Hospital contends that the trial court erred in overruling Hospital's motion for new trial because there is no evidence to support the jury's answer to Special Issue 10 that the hospital failed to furnish medical and hospital services. We overrule the point. The issue and answer thereto are totally immaterial. Former Article 8306, Section 7,[3] gave Justice the "sole right to select or choose the persons or facilities to furnish medical aid … hospital services …," and provided that Hospital was "obligated for same," if such medical and hospital services were "reasonably … required at the time of the injury and at any time thereafter to cure and relieve from the effects naturally resulting from the injuries." See *Smith v. Stephenson*, 641 S.W.2d 900, 901–902 (Tex.1982). These requirements of art. 8306, Section 7 were met by the jury's answer to Special Issue No. 11.

The judgment of the trial court is affirmed.

Leg. ch. 483, § 6, 1983 Tex.Gen.Laws 2822.